September 21, 2022

**Via ECF**
The Hon. District Judge Brian M. Cogan
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re:    Response to Motion to Dismiss
                Singh v. Jivan
                E.D.N.Y. Index No. 2:22-cv-4235-BMC

Your Honor:

I.   Introduction

    I represent Plaintiff Kuldeep Singh in the matter of <u>Singh v. Jivan</u>, Index No. 2:22-cv-4235 BMC. This letter respectfully requests, on behalf of Plaintiff, that Defendant's Motion to Dismiss the Complaint be denied or in the alternative that Plaintiff be granted leave to amend the Complaint.

II.   Procedural Background

The Complaint was filed on July 19, 2022 (ECF #1). Defendant was personally served on August 25, 2022 (ECF #2). This letter serves as a response from Plaintiff to Defendant's Motion to Dismiss (ECF #10).

III.   Argument

  a.   <u>Introduction</u>

    Contrary to what Defendant argues, Plaintiff is seeking the correct relief from the appropriate party and in the correct forum. Plaintiff not only satisfies the requirements of personal jurisdiction making the commencement of this action in this Court appropriate, Plaintiff also satisfies the requirements of Subject Matter jurisdiction for this Court throughout his complaint where the amount in controversy clearly exceeds $75,000 (Complaint Pars. 8, 16 and 32). Last, Plaintiff clearly and properly pleads more than one cause of action upon which relief can be granted.

On that basis, the Plaintiff respectfully requests that Plaintiff's instant Motion to Dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(1); (2); (3); (6); and (7) be denied.

b. Personal Jurisdiction over Defendant

Federal Rule 4(k)(1) includes and borrows from the long-arm rule of a given forum state.

New York's long-arm rule allows personal jurisdiction over a non-domiciliary Defendant who transacts to supply goods or services in New York, commits a tort in New York, or causes injury in New York under certain conditions (regularly doing or soliciting business in New York, and deriving substantial revenue in New York; expecting the act to have consequences in New York), or owns any real property in New York. C.P.L.R. § 302(a)(1)-(4).

New York can exercise this personal jurisdiction if it meets two requirements: "the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process." Williams v. Beemiller, Inc., 33 N.Y.3d 523, 528 (2019). Due process arises where a tortfeasor has minimum contacts with the forum, and maintenance of the suit does not offend traditional notions of fair play or substantial justice. *See* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The minimum-contacts requirement would be established if "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

New York law holds that the "use of a New York correspondent bank account, standing alone, may be considered a 'transaction of business' under the long-arm statute if the defendant's use of the correspondent account was purposeful." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013) *citing* Amigo Foods Corp. v. Marine Midland Bank–N.Y., 39 N.Y.2d 391 (1976). New York also makes clear that the 'arising from' prong of Section 302(a)(1) does not require a causal link between a defendant's New York business activity and injury to the plaintiff; all that is needed is a relatedness between the transaction and the legal claim, and the relatedness must be such that the claim is not unmoored from the former. *Id.* at 168-69 (citations omitted). Not every element pleaded must relate to New York contacts; at least *one* must arise from those contacts. *Id.*

In addition, "[r]epeated, deliberate use that is approved by the foreign bank on behalf and for the benefit of a customer…demonstrates volitional activity constituting transaction of business." Al Rushaid v. Pictet & Cie, 28 N.Y.3d 316, 327 (2016). New York law holds that "the quantity and quality of a foreign bank's contacts with the correspondent bank must demonstrate more than banking by happenstance." Id.

The negotiations and the formation of the Partnership Agreements at issue occurred in Nassau County (Complaint at ¶ 6). Monies paid by Plaintiff to Defendant were transferred in New York, and the funds were provided through a check drawn from a New York Bank (Complaint at ¶ 5). The Defendant argues that the agreement was oral and involved foreign corporations and companies, that all of the business based on the oral agreement was conducted in Maryland and Nevada, and that each Cause of Action in the Complaint alleges that tortious activity occurred outside New York State.

However, the long-arm statute **does** specify that a tort committed outside the state causing injury to person or property in New York can give rise to jurisdiction if the person expects or reasonably should expect that tort to have consequences in New York, and he derives substantial revenue from interstate or international commerce.

The Defendant's use of the corresponding bank in New York to receive money from the Plaintiff, a New York resident, is a purposeful availment for the purposes of transacting business (Complaint at ¶ 5). In addition, the prolonging of the accounting and distribution of profits would have an impact on the Plaintiff in New York. (Complaint at ¶ 20). Even where the business are located at Las Vegas and Maryland (Complaint at § 10), the Defendant's failure to account for the profits of the Businesses, failure to manage proper accounts, and failure to distribute profits, failure to memorialize the oral Partnership Agreements and further incorporate the same, deception of the Plaintiff about the nature of the business, and unjust enrichment of himself, are such that the Defendant knows or should know that these actions would have consequences for the Plaintiff in New York, and he derives and continues to derive substantial revenue from interstate commerce (*See* Complaint at ¶¶ 25-35).

The Plaintiff's giving the Defendant $150,000 (Complaint at ¶ 16), and the Defendant's receiving that money through a New York bank (Complaint at § 5) are such that the Defendant's receipt of this money, with a view toward entering into business with the Plaintiff, demonstrates volitional activity from his part constituting transaction of business. This was more than banking by happenstance; this was banking of which the Defendant purposefully availed himself.

Defendant conducted activity and transacted business in New York, and he knew or should have known that his actions would have had an impact in New York, while he would derive significant revenue from interacting on a business level with the New York resident Plaintiff.

c. The Amount-in-Controversy Exceeds $75,000, and thus the Court has Subject-Matter Jurisdiction over the Dispute

The determination of the value of the matter in controversy for federal jurisdiction purposes "is a federal question to be decided under federal standards." Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352. Federal courts, of course, ought to look to state law "to determine the nature and extent of the right to be enforced in a diversity case." Id. at 352-53. And it is also true that "a plaintiff may not rely upon a claim for damages that cannot be legally awarded under state law in order to meet the threshold amount." Brown v. New York State Supreme Ct. for Second Jud. Dist., 680 F. Supp. 2d 424, 429 (E.D.N.Y. 2010).

For an amount in controversy claim, the plaintiff has of showing that there is a reasonable probability that the claim is in excess of the statutory jurisdictional amount. Int'l Christian Broad., Inc. v. Koper, 928 F. Supp. 2d 559, 562 (E.D.N.Y. 2013) Generally, "this probability is easily met, since there exists a rebuttable presumption that the face of a plaintiff's complaint is a 'good faith representation of the actual amount in controversy.'" Int'l Christian Broad., Inc. v. Koper, 928 F. Supp. 2d 559, 562 (E.D.N.Y. 2013). To rebut this presumption, "the party opposing jurisdiction must show 'to a legal certainty' that the amount sought is below the jurisdictional minimum. Id.

Despite what the Defendant says, the $150K alone invested by the Plaintiff exceeds the amount in controversy. (Complaint at §§ 8, 16, and 21). As federal standards are what determine the value of the matter in controversy, the Plaintiff's investment meets those standards. The Defendant has not shown to a legal certainty, despite saying that the Plaintiff has not proven such, that the amount the Plaintiff is seeking is below the 75K minimum. Thus, the presumption works in favor for the Plaintiff.

Though punitive damages are generally not available in a breach of contract action in New York, they can be available "where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious…to warrant the additional imposition of exemplary damages." U.S. for Use & Benefit of Evergreen Pipeline

Const. Co. v. Merritt Meridian Const. Corp., 95 F.3d 153, 160–61 (2d Cir. 1996), *quoting* Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.S.2d 339, 342-43 (1994). For breach of contract claims, this would be where there is "a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations'." Rocanova, 83 N.Y.S.2d at 342.

Here, the Defendant's failure to maintain proper accounts of the partnership Businesses and his failure to provide accountings and distributions despite numerous demands from Plaintiff demonstrates and implies a criminal indifference to his civil obligations as a partner. (Complaint ¶ 25).

d.  The Complaint States a Claim

When ruling on a defendant's motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). The complaint must be liberally constructed in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The complaint must be dismissed only if the plaintiff could prove no set of facts that would entitle him or her to a claim. *Id.* at 422.

In New York, "[a] partnership is an association of two or more persons to carry on as co-owners a business for profit and includes for all purposes of the laws of this state, a registered limited liability partnership. N.Y. P'ship Law § 10 [1] (McKinney). In determining whether there is a partnership, "the relevant factors are (1) the parties' intent, whether express or implied; (2) whether there was joint control and management of the business; (3) whether the parties shared both profits and losses; and (4) whether the parties combined their property, skill, or knowledge." Yador v. Mowatt, No. 19-CV-4128(EK)(RML), 2021 WL 4502442, at *2 (E.D.N.Y. Sept. 30, 2021), *quoting* Hammond v. Smith, 151 A.D.3d 1896, 1897 (4th Dep't 2017). A partnership agreement can be oral. Sriraman v. Patel, 761 F.Supp.2d 7, 18 (E.D.N.Y. 2011).

Notwithstanding the Defendant's argument that New York General Obligation Law § 5-701(a) would bar enforcement of the Partnership Agreement, the Plaintiff still has a claim. In New York law, "[t]he Statute of Frauds is 'generally inapplicable' to a partnership agreement because 'absent any definite term of duration, an oral agreement to form a partnership or joint venture for an indefinite period creates a partnership or joint venture at will.'" Belluomo v. Tiger Schulmann's Mixed Martial Arts, No. 14-CV-4402 JS AKT, 2015 WL 5794356, at *7 (E.D.N.Y. Sept. 30, 2015), *quoting* Foster v. Kovner, 44 A.2d 3d 23, 27 (1st Dep't 2007). The general inapplicability of the Statute of Frauds to such oral agreements

receives further support in the Second Circuit. *See* Grasso v. Donnelly-Schoffstall, No. 21-1021, 2022 WL 728839, at *2 (2d Cir. Mar. 11, 2022).

The defendant argues the Partnership involved a long-term relationship over perpetual companies/corporations, and could not be performed within a year nor in the lifetime of the parties.

However, what the Plaintiff and Defendant formed together with the Partnership Agreement in 2016 and 2017 is a partnership at will (Complaint at ¶ 7). Even if the agreement could not be completed within one year, or in the lifetime of the parties, an oral partnership is not barred by the Statute of Frauds in New York. In addition, the oral Partnership Agreement specifies that the Defendant would be responsible for the day-to-day operations of the Businesses, the Plaintiff would be entitled to his respective percentage of the profits, and all major decisions would be taken by the consent of each partner (Complaint at ¶ 16). The agreement, in true partnership form, also included the sharing of profits and losses (Complaint ¶ 9). The Statute of Frauds is inapplicable to an Agreement such as we have here.

As for the Second and Third Causes of Action, since an oral partnership or joint venture at will can be formed for an indefinite period, the Breach of Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment claims would apply, because this would be an agreement that exists, and that would not need a defined term, and is not defeated by not being in writing.

For a fiduciary relationship claim, "the plaintiff must demonstrate: (1) the existence of a fiduciary relationship between the parties; and (2) a breach of the fiduciary duty." Atlantis Info. Tech., GmbH v. CA, Inc., 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) A fiduciary relationship is found when these four elements are established: "(1)[t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself. *Id.*, quoting *Osan Ltd. v. Accenture LLP,* 454 F.Supp.2d 46, 56–57 (E.D.N.Y. 2006).

Here, the Plaintiff can demonstrate a fiduciary relationship claim because the Plaintiff gave the Defendant day-to-day management and operation power over the Businesses (Complaint ¶ 8). This resulted in the Defendant being able to fail in his maintenance of the proper accounts of the Businesses, and he failed to provide the same to the Plaintiff, despite

the Plaintiff repeatedly requesting for an accounting (Complaint ¶ 13). This allowed the Defendant to thus avoid the Partnership Agreements by prolonging the accounting and enriching himself from the Plaintiff's contribution (Complaint ¶¶ 20-21). The Plaintiff was unable to effectively protect himself against these actions by the Defendant, because the Defendant failed to give a proper accounting, despite the Plaintiff's request.

IV.   Conclusion

For these reasons, Plaintiff respectfully submits Defendant's instant Motion to Dismiss be denied or in the alternative that Plaintiff be granted leave to amend the Complaint. We remain ready to supplement the briefing about any issue raised here if so requested.

RESPECTFULLY SUBMITTED,

_____
Erica T. Yitzhak, Esq.